# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | | |
|---|---|---|
| WAPP TECH LIMITED PARTNERSHIP and WAPP TECH CORP., | § § § | |
| Plaintiffs, | § § | Case No. 4:23-cv-01137 |
| v. | § § § | JURY TRIAL DEMANDED |
| JPMORGAN CHASE BANK, N.A., | § § | |
| Defendant. | § § § | |

## WAPP'S P.R. 4-5(c) REPLY CLAIM CONSTRUCTION BRIEF

**TABLE OF CONTENTS**

A.   "simulate" / "emulate" ........................................................................................1

B.   "application" .......................................................................................................3

C.   "system for [testing/developing] an application for a mobile device"...............6

D.   "the connection simulation"................................................................................7

E.   "the monitored resource".....................................................................................7

F.   "network characteristics indicative of performance of the mobile device".......7

G.   "on the mobile device"........................................................................................8

H.   "select one or more characteristics associated with a mobile device"...............9

I.   "the physical mobile device"..............................................................................10

# TABLE OF AUTHORITIES

**Cases**

*Edwards Lifesciences LLC v. Cook Inc.*,
 582 F.3d 1334 (Fed. Cir. 2009) ................................................................................................ 3

*Energizer Holdings, Inc. v. Int'l Trade Comm'n.*,
 435 F.3d (Fed. Cir. 2006) ........................................................................................................ 10

*Fisher-Price, Inc. v. Graco Children's Prods.*,
 154 F. App'x 903, 909 (Fed. Cir. 2005) ................................................................................... 6

*Ironworks Patents. LLC v. Samsung Elecs. Co.*,
 798 F. App'x 625 (Fed. Cir. 2020) ........................................................................................... 3

*Poly-Am., L.P. v. API Indus., Inc.*,
 839 F.3d (Fed. Cir. 2016) ..................................................................................................... 3, 4

*Renishaw PLC v. Marposs Societa' Per Azoni*,
 158 F.3d (Fed. Cir. 1998) ......................................................................................................... 3

*Smartflash LLC v. Apple Inc.*,
 77 F. Supp. 3d (E.D. Tex. 2014) .............................................................................................. 9

*Thorner v. Sony Comput. Entm't Am. LLC*,
 669 F. 3d (Fed. Cir. 2012) .................................................................................................... 4, 5

*TQP Development, LLC v. Intuit Inc.*,
 No. 2:12-cv-180-WCB, 2014 U.S. Dist. LEXIS 84057 (E.D. Tex. June 20, 2014) ................. 1

*UltimatePointer, L.L.C. v. Nintendo Co.*,
 816 F.3d (Fed. Cir. 2016) ......................................................................................................... 3

*Visible Connections, LLC v. Zoho Corp.*,
 418 F. Supp.3d (W.D. Tex. 2019) ............................................................................................ 7

*Wapp Tech et al. v. Seattle Spinco et al.*,
 No. 4:18-cv-00469-ALM (E.D. Tex. Apr. 27, 2020) ........................................................... 1, 2

### A. "simulate" / "emulate"

"[P]revious claim constructions in cases involving the same patent are entitled to **substantial weight**." *TQP Development, LLC v. Intuit Inc.*, No. 2:12-cv-180-WCB, 2014 U.S. Dist. LEXIS 84057 at *22 (E.D. Tex. June 20, 2014). Chase asks the Court to reverse its previous correct constructions of these terms, but Chase brings nothing new to the table. Like Micro Focus, Chase argues different terms are presumed to have different meanings; this Court previously rejected that same argument and held the presumption was overcome. *Micro Focus* Order at 20. Like Micro Focus, Chase argues "the specification uses 'emulate' with reference to representing a mobile device and uses 'simulate' with reference to representing a communication network"; this Court found that argument "unpersuasive" and rejected it. *Id.* at 24. Like Micro Focus, Chase argues '192 Claim 1's reference to "emulate … a plurality of network characteristics" must be an error; this Court rejected that argument too as "premised on the above-rejected argument that the specification attributes different meanings to 'simulate' and 'emulate.'" *Id.* at 25.

Chase's only new argument (which it relegates to a footnote) is that "the same logic applies" to '192 claim 16, *i.e.*, Chase argues both claims 1 and 16 recite "emulate network characteristics" due to an alleged "editing error" during amendment. Resp. at 8n.3. But '192 claim 16 was never amended and it was introduced prior to the amendment to claim 1, so this argument cannot be correct. Ex. D at 9 (claim 16 was originally claim 59). Claim 16 was originally drafted to recite "emulate network characteristics," underscoring that "simulate" and "emulate" were used interchangeably by the patentee. Chase does not argue claims 1 and 16 are indefinite, yet they directly contradict Chase's construction that limits "emulate" to hardware and excludes emulating network characteristics. A construction that contradicts the claims cannot be correct.

"Simulate" and "emulate" are interchangeable throughout the intrinsic record, *e.g.*:

1

| | |
|---|---|
| "*emulate* network characteristics" '192 cl. 16 | "*simulate* network characteristics" '678 cl. 16 |
| "*emulate* network characteristics" '910 at 1:65-66. | "network characteristics for *simulation* by *simulator*" '910 at 11:34-35. |
| "*emulate* real user behavior" '864 cl. 11 | "*simulate* real users" '864 cl. 9 |
| "*Emulator* 101 then generates *mobile device model 102*, based upon characteristics 115" '910 at 5:31-34. | "*simulated* functionality of *model 102* (e.g., *simulating* additional handset functionality and/or network functionality)" '910 at 9:19-20. |
| "*emulate* … a plurality of hardware characteristics indicative of performance of the mobile device" '192 cl. 60. | "a *simulation* of the mobile device" '579 cl. 15 |

Chase and its expert concede an emulator can include a simulator. Resp. at 9 ("the emulator can 'simulate' and some embodiments show a simulator as present within the emulator"); Chase Dec. ¶122 ("the emulator can emulate and simulate"). Chase also concedes a simulator can include an emulator, *i.e.*, an emulator can operate within a simulator. *Id.* at 8 ("The specification also describes '*simulating*' the application, which means playing the application on an *emulated* device model *in* a *simulated* network environment."). If an emulator can include a simulator and a simulator can include an emulator, then these two concepts must be equivalent. If A includes B and B includes A, then A=B.[1] The only way two circles in a Venn diagram can each include the other is if they overlap perfectly. By conceding "simulate" and "emulate" are each broad enough to include the other, Chase necessarily concedes they are equivalent.

The extrinsic evidence does not help Chase either. Chase has no rebuttal to the Wiley technical dictionary the Court found persuasive in *Micro Focus*, except to argue that only "one of five listed definitions of 'simulation' uses the word 'emulate.'" Resp. at 10. Even Chase's preferred dictionaries are of no help. The IBM Dictionary says "simulate" means "represent certain features of the behavior of a *physical* or abstract system," *i.e.* "simulate" can include physical systems like hardware. *Id.* at 8. And Chase's IEEE Dictionary defines "emulation" as "imitat[ing] one system

---

[1] This principle is called the antisymmetry of set inclusion. *See, e.g.*, https://en.wikipedia.org/wiki/Antisymmetric_relation ("if every element in A also is in B and every element in B is also in A, then A and B must contain all the same elements and therefore be equal").

2

with another, *primarily* by hardware," but *primarily* is not *limited* to hardware like Chase's incorrect construction of "emulate." Instead, *primarily* includes other features (like networks).

### B. "application"

Chase and its expert concede a POSITA in 2005 knew about both frame-based applications and non-frame-based applications and knew about tools for developing both frame-based and non-frame-based applications. Chase Dec. ¶66 ("As of the asserted priority date of the Asserted Patents, a POSA would have known that programmers commonly relied on object-oriented languages to develop more advanced applications for the Internet age and for mobile devices. For example, '192 patent refers to 'Java, .NET and BREW' as examples of early frontrunners for development with mobile device targets."); Chase Tech Tutorial at 11:45 ("*Unlike in competitor IDEs*, Flash represented an application as a timeline of frames"). Chase also does not dispute that the specification refers to both frame-based application development tools (*e.g.* Flash) and non-frame-based application development tools (*e.g.* Java, .NET, and BREW). *See* Br. at 12-13; Resp. at 16. A POSITA in 2005, therefore, would have understood that the ordinary meaning of "application" broadly included both frame-based and non-frame-based applications.

To alter this ordinary meaning, Chase would need to prove express definition or disavowal. Every case Chase cites is an express definition or disavowal case. *Ironworks*, 798 F. App'x at 625 ("a camera unit as *expressly defined* in the specification includes a camera, optics, and an image processing unit"); *Edwards*, 582 F.3d at 1334 ("the specification *defines* 'malleable' to exclude any substantial resilience, and that definition *overrides any ordinary meaning*"); *Poly-Am*, 839 F.3d at 1137 ("*the inventor intended to disavow* any claim scope encompassing short seals that are not inwardly extended"); *Renishaw*, 158 F.3d at 1249-52 ("the *definition* selected by the patent applicant controls"); *UltimatePointer, L.L.C. v. Nintendo Co.*, 816 F.3d at 823 ("The specification repeatedly emphasizes that *the invention* is directed to a direct-pointing system").

3

Yet Chase never attempts to argue express definition or disavowal and never attempts to meet the "exacting" standards these doctrines demand. *Poly-Am*, 839 F.3d at 1136 ("[T]he standard for disavowal is ***exacting***, requiring ***clear and unequivocal evidence*** that the claimed invention includes or does not include a particular feature. Ambiguous language cannot support disavowal."); *Thorner*, 669 F.3d at 1365 ("to act as its own lexicographer, a patentee must '***clearly set forth a definition*** … the patentee must '***clearly express an intent*' to redefine the term**.").

Chase fails to engage with the disclaimer and disavowal standards because it knows it cannot meet them. For example, Chase says "the asserted patents ***solely*** describe systems and methods concerning 'frame based applications.'" Resp. at 10. This is not true. As shown in the opening brief, "the Figure 14 embodiment describes an 'application,' which is ***not*** limited to a 'frame-based application.'" Br. at 12. Chase's brief does not even mention Figure 14 and Chase makes no attempt to address this argument, because it is plainly true. Likewise, each patent's title and abstract refer to an "application" with no "frame-based" qualifiers. Br. at 12. The summary of the invention further describes "another embodiment" that "determines whether an ***application*** of a mobile device is operable" and columns 9 through 12 describe multiple embodiments that reference "application" with no "frame-based" limitation. '910 at 2:42-47; 9:54-12:58. The specification also teaches the value of developing an application that is "targeted to play on many types of mobile device[s]" and has "accessibility to all available mobile devices," *i.e.*, the invention is not limited to mobile devices that support frame-based applications. *Id.* at 1:58-63. Chase again completely ignores these parts of the intrinsic record and does not mention them at all in its brief. But even if all embodiments were frame-based (as Chase incorrectly claims), this still would not meet the high standard for disavowal or express definition. *Thorner*, 669 F.3d at 1365 ("It is not enough for a patentee to simply disclose a single embodiment or use a word in the same manner

4

in all embodiments, the patentee must 'clearly express an intent' to redefine the term").

Chase also acknowledges the specification discloses non-frame-based platforms such as "Java, .NET, and BREW" but argues the inventor "distinguished them from the claimed invention." Resp. at 16. This, again, is not true. The provisional describes "a market *primarily based on* the Java and J2ME platform"; it goes on to explain that "[i]n the past year, Java was one of the largest funded technology platforms in one of the largest emerging venture markets, mobile commerce" and refers to "Java, .NET, and BREW" as "frontrunners" and "the main platforms for mobile content today." Provisional at 10, 12, 14. Chase cites statements where the inventor discusses advantages of Flash and predicts that Flash may one day overtake Java in the marketplace. Resp. at 16. But Chase never cites any statement that disavows non-frame-based platforms like Java from the scope of "the invention" or that defines the invention as limited to frame-based platforms like Flash. No such statement exists. Nor does Chase present any reason why the invention would be technologically limited to frame-based applications. Malek Dec. ¶153 ("Nor is there any technical reason that would limit the invention to frame-based applications.")

Chase's brief cites almost exclusively to a single embodiment—Figure 1. Chase argues this embodiment equates "frame-based application 104" and "application 104," citing passages such as "[p]rofiler 106 monitors playing of *frame based application 104* within model 102 to estimate resource usage of *application 104*." Resp. at 11-12. This argument is a red herring. Figure 1 is "*one exemplary embodiment*." '910 Pat. at 3:19. In the context of the Figure 1 "exemplary embodiment," application 104 is a frame-based application. But this does not mean the term "application" only refers to frame-based applications in all embodiments. If I mention my blue pickup truck, then I later refer to it shorthand as a "truck," this does not imply the word "truck" can only refer to blue pickup trucks. Chase makes a similar argument about '864 claim 31, in

5

which "a frame-based application" provides antecedent basis for "the application." Br. at 12. Again, this is a red herring. No one disputes that "application" *can* refer to a frame-based application. But "application" is not *limited* to a frame-based application in all embodiments as confirmed by multiple embodiments that are not frame-based (*e.g.*, Fig. 14, the abstracts, and "Java, .NET, and Brew"). This is further confirmed by intrinsic statements that say a frame-based application is just "one example" of an application, *e.g.*, "In step 702, method 700 authors an *application* for a mobile device. In *one example* of step 702, a user interacts with *frame based application* development tool 112 to author application 104." '910 at 8:9-12; *see also id.* at 8:1-4. The specification uses "example" or "exemplary" eighty-eight times and uses those words in reference to the Figure 1 frame-based embodiment twenty times. *Id.* at 2:50-55; 3:19-5:52.

Chase also cites claim 25, but this claim language undermines Chase's position. Claim 20 recites "an application" and "the application." Claim 25, which depends from claim 20, introduces a new term "*a* frame-based application." The fact that dependent claim 25 introduces "a frame based application" as a new term shows this term is different from the broader term "application" recited in independent claim 20. The patentee's decision to recite an "application" in some claims and a "frame based application" as a separate term in others shows Chase's construction is incorrect. Br. at 11-12. As Chase points out elsewhere in its briefing, "[d]ifferent claim terms are presumed to have different meanings." Resp. at 2. Chase cannot overcome that presumption here.

### C. "system for [testing/developing] an application for a mobile device"

Chase asserts these preambles are not structural: "[a]ll these phrases recite only an intended use of the claimed system." Resp. at 17-18. That is not correct. Unlike Chase's *Panasonic* case, where the phrase "suitable for use for" was held to be a statement of "intended use," these preambles recite specific structural relationships between the "system," "testing/development," the "application," and the "mobile device" that are not repeated in the bodies of the claims. Br. at 16.

6

Chase cites *Visible* and characterizes it as holding the preamble was "not limiting ***despite*** providing antecedent basis." *Id.* at 17. This is not true. *Visible* held the preamble "[a] system for application sharing comprising" was not limiting because it "***does not*** provide a necessary ***antecedent basis*** for terms in the bodies of each claim." 418 F. Supp. 3d at 161. When ruling on a different claim preamble, the *Visible* court held that because "terms in the claim body rely on the preamble for ***antecedent basis***, the Court concludes that the preamble to claim 1 ***is limiting***." *Id.* at 168. *Visible* supports Wapp's position that these preambles are limiting because they provide antecedent basis for two claim terms, which Chase does not dispute.

### D. "the connection simulation"

"The connection simulation" reinvokes the plural "one or more" meaning of its antecedent basis—the "one or more connection simulations" in claim 2. Br. at 17-18. This is "best described as a rule, rather than merely as a presumption." *Id.* at 17. Chase notes that "claims 8 and 9 … recite '***the one or more*** connection simulations'" Resp. at 29. This language is equivalent. It is a basic "rule" of patent construction that "the connection simulation" and "the one or more connection simulations" have exactly the same meaning. Absent a compelling reason, courts follow this rule.

### E. "the monitored resource"

"The monitored resource" reinvokes the plural "one or more" meaning of its antecedent basis, *i.e.*, the "one or more resources" whose utilization is being monitored. Br. at 18-20. Chase offers no reason to deviate from this "rule." Resp. at 30.

### F. "network characteristics indicative of performance of the mobile device"

Chase feigns confusion: "[s]killed artisans would not understand how 'network characteristics' could indicate performance of a mobile device because 'network characteristics' are not related to mobile devices." Resp. at 25. Anyone who has ever used a mobile phone knows how network characteristics relate to mobile device performance—mobile device applications tend

7

to perform badly on slow networks and well on fast networks, for example. Malek Dec. ¶ 109.

Chase insinuates this claim limitation is an error because it "arises from an amendment made during prosecution of the '192 patent." Resp. at 25. But the patentee deliberately repeated the same "network characteristics indicative of performance of the mobile device" language in the subsequent claims of the '864 and '678 Patents. This repeated and deliberate claim language is not an error, and it is amply supported by the specification. Br. at 23.

### G. "on the mobile device"

Chase also feigns confusion about this term, arguing it is "unclear if the phrase 'on the mobile device' limits 'a system,' or 'an application,' or 'a user,' or 'a photo,' or 'to modify'" and asks rhetorical questions like "Could this be *any* mobile device? Any mobile device type?" Resp. at 23. But every single asserted claim includes the term "mobile device," and Chase is not confused about what "mobile device" means in those claims. For example, '811 claim 1 recites "software instructions for developing an application to be run on a mobile device," but Chase is not confused about what "mobile device" means in that claim or what it limits.

Chase's feigned confusion is premised entirely on the fact that "mobile device" is preceded by the article "the." A claim does not need to be optimally drafted to be definite; it just needs to provide "reasonable certainty." There is only one valid interpretation of this claim, and Chase does not propose any alternative interpretation: "the first instance of 'the mobile device' provides antecedent basis for the second instance." Malek Dec. ¶133. Chase does not dispute that this is the only way to interpret the claim—it is therefore reasonably certain and not indefinite.

Chase also argues the specification "never mentions a mobile device with an application for modifying photos" but this is wrong. *See, e.g.*, '910 at 6:36-38 ("each frame of frames 223 includes … action scripts that involve *image manipulation*"). This is also a red herring because it is at best a written description or enablement argument, not an indefiniteness argument.

Although the meaning of this claim is reasonably certain and does not need correction, in the alternative the Court can correct "on the mobile device" to "on a mobile device" because "(1) the correction is not subject to reasonable debate based on consideration of the claim language and the specification and (2) the prosecution history does not suggest a different interpretation of the claims." Br. at 26. Chase does not rebut either of these points. Chase cites *Smartflash*, but in that case there were two competing possibilities and "no way of knowing which (if either) correction to claim 13 should apply." 77 F. Supp. 3d at 561. Here there is only one possible correction, and Chase has not proposed any alternative.

### H. "select one or more characteristics associated with a mobile device"

Chase argues "'select one or more characteristics associated with a mobile device type' cannot mean 'selecting a mobile device with associated characteristics,' as Wapp urges." Resp. at 20. But Wapp is not "urging" this at all. It is Chase that is collapsing the meanings of these concepts to try to fit a square peg (the Court's prior ruling about '579 claim 1) into a round hole (claim 15). In the Bank Cases, this Court held "the selected characteristics" in claim 1 lacked antecedent basis because the preceding claim language recited "one or more characteristics of a *selected mobile device type*." Because claim 1 recited selecting a mobile device type, not selecting characteristics, the Court held "the selected characteristics" had no antecedent basis. Bank Case Order at 40.

The Court explicitly contrasted claim 1 with claim 15, noting that claim 15 *does* recite selecting characteristics: "the lack of antecedent basis [of Claim 1] is underscored by Claim 15 of the '579 Patent, which *does* recite an operation of 'select[ing] one or more characteristics associated with a mobile device.'" *Id.* at 38. The Court did not hold that selecting characteristics is indefinite. The Court held that claim 1 (unlike claim 15) did not recite selecting characteristics and therefore lacked antecedent basis. Chase does not argue this term lacks antecedent basis.

Chase wrongly contends the specification does not support this term. This is a red herring

9

that goes to enablement or written description, not indefiniteness. Regardless, the specification amply supports this term. Br. at 27. The specification discloses "mobile device characteristics" repeatedly and gives twelve examples of such characteristics in Table 1. '910 at 4:21-35. The specification also gives multiple examples of selecting characteristics, *e.g.*, from a drop-down menu. *See, e.g.*, '910 at 10:53-55 ("the user may **select menu item** 901, FIG. 9, to immediately locate, download and import modeling ***characteristics***"). A POSITA would understand what it means to "select" something in a computer program. Because a POSITA would understand what "characteristics associated with a mobile device" are and what it means to "select" one or more of those characteristics, the meaning of this term is clear.

### I. "the physical mobile device"

Chase again manufactures confusion by taking a persnickety view of the claim, arguing the inclusion of the word "physical" in "the physical mobile device" destroys the antecedent basis relationship and renders the claim indefinite. This is not the law. Claim 15 uses the word "physical" to emphasize that this mobile device is real rather than simulated. The claim's prior recitation of "a mobile device" refers to the same physical device. There is no requirement that the words exactly match. The standard is reasonable certainty. *See, e.g.*, *Energizer Holdings, Inc. v. Int'l Trade Comm'n.*, 435 F.3d 1366, 1370-71 (Fed. Cir. 2006) ("an anode gel comprised of zinc as the active anode component" provided antecedent basis for "said zinc anode").

Chase says it is confused because claim 15 recites "a mobile device" twice. But the first instance of "a mobile device" appears in the preamble, which is not limiting (and Chase does not argue it is). Unlike the preambles discussed in section C, the non-limiting preamble of claim 15 does not provide antecedent basis for any term. As highlighted in Wapp's opening brief, "a mobile device" in the body of the claim provides antecedent basis for "the physical mobile device." Br. at 28-29 (green highlighting).

10

Dated: October 15, 2024

Respectfully submitted,

By: /s/ *Alden G. Harris*
Leslie V. Payne
State Bar No. 0784736
lpayne@hpcllp.com
R. Allan Bullwinkel
State Bar No. 24064327
abullwinkel@hpcllp.com
Alden G. Harris
State Bar No. 24083138
aharris@hpcllp.com
Christopher L. Limbacher
State Bar No. 24102097
climbacher@hpcllp.com
Carlos I. Ruiz
State Bar No. 24110614
cruiz@hpcllp.com
HEIM PAYNE & CHORUSH, LLP
609 Main Street, Suite 3200
Houston, Texas 77002
Telephone: (713) 221-2000
Facsimile: (713) 221-2021

J. Michael Young
**WYNNE, SMITH & YOUNG, PLLC**
Texas State Bar No. 00786465
707 W. Washington
Sherman, Texas 75092
(903) 893-8177
(903) 892-0916 (fax)
E-mail: myoung@wynnesmithlaw.com

**ATTORNEYS FOR PLAINTIFFS
WAPP TECH LIMITED PARTNERSHIP and
WAPP TECH CORP.**

## CERTIFICATE OF SERVICE

I hereby certify that on October 15, 2024, a copy of the foregoing and attachments thereto were served via the Court's ECF system on all counsel of record in this matter.

                                            */s/ Alden G. Harris*
                                            Alden G. Harris