# Exhibit A





**Wapp Tech Limited Partnership and Wapp Tech Corp.**

**v.**

**JPMorgan Chase Bank, N.A.**

Civil Action No. 4:23-cv-01137-ALM

# Claim Construction Hearing

November 8, 2024

1

| "emulate" | | "simulate" | |
|---|---|---|---|
| JPMC's Construction | Wapp's Construction | JPMC's Construction | Wapp's Construction |
| **"model the hardware [of]"** | Plain meaning | **"represent features of"**; *different than emulate* | "Emulate" |

1. A system for developing an application for a mobile device comprising:

a software authoring interface configured to simultaneously visually emulate, via one or more profile display windows, a plurality of network characteristics indicative of performance of the mobile device when executing the application; wherein the software authoring interface is further configured to simulate a network connection state encountered by the mobile device.

192 Patent, claim 1

2



864 Patent, Fig. 1B



*FIG. 1B*

3





FIG. 8

864 Patent, Fig. 8



day. This rapid mobile device development requires that applications designed to run on these mobile devices also sustain rapid development. Development systems targeted at

**864 Patent, 1:22-24**

the targeted mobile device based upon resource usage. Currently, the only way to determine if an application plays on a particular mobile device is to transfer the application to the device and play it. During development of an application for

**864 Patent, 1:57-60**

Where an application is targeted to play on many types of mobile device, it must be transferred and tested on a mobile device representative of each targeted mobile device type. This transferring and testing process is time-consuming and therefore costly for the application author.

Furthermore, having accessibility to all available mobile devices in targeted geographical markets worldwide as well as real-time interaction with network operators to measure and emulate network characteristics within each market is presently not possible.

**864 Patent, 1:65-2:1-7**

cation player. Characteristics defining performance of the mobile device are loaded. The mobile device is emulated using a model based upon the characteristics. The application

**864 Patent, 2:13-15**

includes an application player. An application development tool authors the application and the mobile device is emulated using a model based upon the characteristics. The application is played within the model and the model is monitored to determine resource utilization of the application for the selected mobile device.

**864 Patent, 2:20-25**

FIG. **2** is a block diagram illustrating detail of an emulator of the system of FIGS. **1**A and **1**B.

**864 Patent, 2:56-57**

FIG. **8** is a block diagram illustrating the emulator of FIG. **1** interacting with an operator development server via the Internet for simulating playing of the application within a mobile device connected to a wireless network.

**864 Patent, 3:4-7**

5

application **104**. Emulator **101** includes model algorithms **148** and profiler **106**. Model algorithms **148** represent one or more algorithms that operate to generate mobile device model **102** to emulate mobile device **114** while executing application **104**. Specifically, model algorithms **148** define operation of mobile device **114** based upon mobile device characteristics **115**.

TABLE 1

Mobile Device Characteristics

| Parameter | Value |
| --- | --- |
| Name | NOKIA 3650 |
| Processor | ARM 4T |
| Processor Speed | 104 MHz |
| Storage Access | 5.88 |
| Speed | files/second |
| RAM Size | 256 MB |
| Storage Size | 512 MB |
| Display Width | 256 |
| Display Height | 394 |
| Pixel Depth | 24 |
| Processor Availability | 60% |
| RAM Availability | 60% |
| Storage Availability | 40% |

Table 1 Mobile Device Characteristics', shows exemplary characteristics that may be used to specify hardware attributes and performance of model **102** to emulate mobile device **114**.

864 Patent, 5:11-38

In one embodiment, mobile device characteristics **115** may be supplied with a device model specific to one mobile device. For example, a manufacturer may supply a combined device model and characteristics for each mobile device **114**. Emulator **101** may then utilize the combined device model as device model **102**.

864 Patent, 5:22-27

characteristics **115**, within memory **132**. Emulator **101** then loads and plays application **104** within model **102**. In all embodiments described herein, it is to be noted that emulation is performed on a processor extrinsic to the mobile device being emulated. Emulator **101** may load all or part of profiler

864 Patent, 5:37-41

6



In one example of operation, emulator **101** downloads a network simulator interface **804** from operator development server **808** into device model **102** as shown in FIG. **8**. Network simulator interface **804** includes functionality that allows device model **102** to communicate with simulator **810** to simulate connectivity of mobile device **114** with a wireless network. Specifically, network simulator interface **804** within model **102** interacts with data provider **812** and event generator **814** to determine resource utilization resulting from network interaction by model **102**. Thus, as application **104** plays within model **102**, the effects of mobile device **114** interacting with a wireless network are simulated such that frame-based profile data display window **110** shows resource utilization that includes the live or scripted effects of interaction with the wireless network. In one embodiment, capacity

864 Patent, 10:51-65

7



Simulator **810** is shown with a data provider **812** and an event generator **814**. Data provider **812** may, for example, simulate data transfers within a wireless network. For example, the data transfer may be cased upon a certain bandwidth associated with the wireless network. Event generator **814** may, for example, generate certain events (e.g., incoming calls, incoming text messages, etc) that occur within a wireless network. Simulator **810**, using data provider **812** and event generator **814**, thus interacts with network simulator interface **804** to model operation of a wireless network (e.g., a mobile phone network).

864 Patent, 11:7-17

# The Term "Application" Means Frame Based Application

| JPMC's Construction | Wapp's Construction |
|---|---|
| **"Frame based application"** | Plain and ordinary meaning |

The term "application" appears in all asserted claims

> 1. A system for developing an application for a mobile device comprising:
> a software authoring interface configured to simultaneously visually emulate, via one or more profile display windows, a plurality of network characteristics indicative of performance of the mobile device when executing the application; wherein the software authoring interface is further configured to simulate a network connection state encountered by the mobile device.

192 Patent, claim 1

9

Case 4:23-cv-01137-ALM Document 72-1 Filed 11/08/24 Page 11 of 57 PageID #: 7948

"[Patentee] seems to suggest that lexicography requires a statement in the form "**I define _____ to mean _____,**" **but such rigid formalism is not required.**"

*Astrazeneca AB v. Mut. Pharm. Co.,* 384 F.3d 1333, 1339 (Fed. Cir. 2004)

"A patent applicant **need not** expressly **state 'my invention does not include X" to indicate his exclusion of X** from the scope of his patent."

*Columbia Univ. v. Symantec Corp.,* 811 F.3d 1359, 1363 (Fed. Cir. 2016)

"The **interchangeable use** of the two terms is **akin to a definition** equating the two."

*Edwards Lifesci. LLC v. Cook Inc.,* 582 F.3d 1322, 1329 (Fed. Cir. 2009)

# Inventor Equated "Application" And "Frame Based Application"

Inventor equated "application **104**" and "frame based application **104**" in the same sentence:

> Profiler **106** monitors playing of frame based application **104** within model **102** to estimate resource usage of application **104** and generates a frame based profile data display **110**. Frame based profile data display **110** may allow a user of system **100** to identify areas within application **104** that would exceed resources of mobile device **114**.

192 Patent, 4:66-5:4

11

# Inventor Equated "Application" And "Frame Based Application"

Inventor equated "application **104**" and "frame based application **104**" in the same paragraph:

In one example of operation, development tool **112** is used to develop frame based application **104**. Application **104** is transferred to emulator **101** for playing within mobile device model **102** to estimate resource usage of application **104** when played on mobile device **114**. Upon playing application **104** within model **102**, emulator **101** utilizes profiler **106** to determine resource utilization of application **104** based upon mobile device characteristics **115**.

192 Patent, 5:14-21

12

# Inventor Equated "Application" And "Frame Based Application"

Inventor equated "application **104**" and "frame based application **104**" in the same paragraph:

FIG. **1A** shows one exemplary embodiment of a system **100** for emulating and profiling a frame based application **104** playing on a mobile device **114** that includes a Flash Player **116**. System **100** is shown with an emulator **101**, a profiler **106** and a display **110**. Emulator **101** generates a mobile device model **102**, based upon mobile device characteristics **115** of mobile device **114**. Model **102** emulates mobile device **114** to play frame based application **104** and may, for example, generate an emulated mobile device display **111** that represents mobile device **114**. Emulated mobile device display **111** may be interactive to allow a user to interact (in a manner similar to interacting with device **114**) with application **104** while playing within model **102**.

192 Patent, 4:53-65



192 Patent, Fig. 1A (partial)



192 Patent, Fig. 1B

In this case, the specification consistently uses the words "graft" and "intraluminal graft" interchangeably. **It states that "an intraluminal graft as defined above" is carried through a catheter "until the graft extends into the vessel**." 458 patent col. 1 ll. 57–59; *see also id*. at col.5 ll. 11, 17, 21, 24, 26, 27, 55, 58, 64, 65, 67, col. 6 ll. 1, 9 (**interchangeably referring to the device identified by numeral 10 as "graft 10" and "intraluminal graft 10**.").  The interchangeable use of the two terms is **akin to a definition equating the two.**

*Edwards Lifesciences LLC v. Cook Inc.,* 582 F.3d 1322, 1329 (Fed. Cir. 2009)

Profiler **106** monitors playing of frame based application **104** within model **102** to estimate resource usage of application **104** and generates a frame based profile data display **110**.

192 Patent, 4:66-5:1

15

# Federal Circuit Precedent Confirms Definition in Wapp's Patents

**HELD:** "We hold that the proper construction of **'camera unit' requires** that the camera unit include a '**camera, optics, and an image processing unit**.'"

*Ironworks Pats. v. Samsung Elecs.,* 798 F. App'x 621, 624 (Fed. Cir. 2020)

**WHY:** "A camera unit as **expressly defined** in the specification includes a camera, optics, and an image processing unit. *Id.* at **3:14–18**."                         *Id.* at 626

**HOW:** "The specification **consistently refers to camera unit 14** which includes camera arrangement 14o (comprising **camera 14a** and **optics 14b**) and **image processing unit 14c**…. See, *e.g.,* '078 patent at **3:14–18**, 3:22–26, 5:23–25. For example, the specification describes '**[c]amera unit 14**, which is represented in the form of a block diagram in FIG. 5, consists of camera arrangement 14[o] which comprises **camera 14a** provided with suitable **optics 14b**, and **image processing unit 14c** connected to the camera arrangement." '078 patent at **3:14–18**….  And **throughout the specification**, the camera unit and its components are **identified using a numbering convention that associates those components with the number 14**. The specification refers to 'camera unit 14' and its components as 'camera 14a,' 'optics 14b,' and 'image processing unit 14c.'"

*Id.* at 625

"[T]he **location** within the specification in which the definition appears **is irrelevant**."

*Edwards Lifesciences LLC v. Cook Inc.,* 582 F.3d 1322, 1334 (Fed. Cir. 2009)

Case 4:21-cv-01133-ALM   Document 73-1   Filed 11/08/24   Page 19 of 57 PageID #: 7956

"The specification is always highly relevant to the claim construction analysis. Usually, it is **dispositive; it is the single best guide** to the meaning of a disputed term."

*Phillips v. AWH Corp.,* 415 F.3d 1303, 1315 (Fed. Cir. 2005)

"The **only meaning that matters** in claim construction is the **meaning in the context of the patent**."

*Columbia Univ. v. Symantec Corp.,* 811 F.3d 1359, 1363 (Fed. Cir. 2016)

Early frontrunners like Java, .NET and BREW have taken great strides in the early/formative years, the likes of Surf-Kitchen, Action Engine, MFORMA and others taking SMS, MMS and mobile gaming to exciting consumer levels. However, with a market primarily based on the Java and J2ME platform, mobile content and entertainment revenues achieved less than 3% of the total mobile service revenue and less than 19% of non-voice revenue.

Is this a failure? Based on current market projections and a

192 Patent, 3:40-48

19

# Federal Circuit Rejects Wapp's Argument About Different Claims

**Wapp:**

> application." Malek Dec. ¶¶144-46. For example, Claim 20 of the '864 Patent recites "[a] method for emulating an *application*" whereas Claim 31 of the '864 Patent recites "[a] method for emulating a *frame-based application*." The patentee explicitly limited certain claims to "frame-based" applications, and explicitly declined to limit other claims in this way.

Dkt. 64 at 17

**Federal Circuit:**

> "We further agree with Cook that claim differentiation **does not require** that 'graft' be read differently from 'intraluminal graft.' When different words or phrases are used in separate claims, a difference in meaning is presumed However, **simply noting the difference** in the use of claim language **does not end the matter. Different terms or phrases in separate claims may be construed to cover the same subject matter where the written description** and prosecution history **indicate that such a reading of the terms or phrases is proper**."

*Edwards Lifesciences,* 582 F.3d at 1330

**31**. A method for emulating a frame-based application playing on a mobile device that includes an application player, the method comprising:

retrieving characteristics indicative of performance of the mobile device; emulating, on a processor extrinsic to the mobile device, the mobile device as a model based upon the retrieved characteristics; playing the application in real time within the model; monitoring the application playing in the model to determine utilization of the mobile device's resources by the application; identifying a frame of the application where resource utilization by the application exceeds a maximum resource availability threshold of the mobile device; and displaying the identified frame to indicate a crash of the application on the emulated mobile device.

864 Patent, claim 31

21

# Figure 14 Does Not Change Lexicography

"This **single sentence** in the specification **cannot overcome the overwhelming evidence in other parts of the specification** and the provisional application (described above) **demonstrating that the intended definition** of this term does not include information other than machine code instructions. The **patentee cannot rely on its own use of inconsistent and confusing language** in the specification **to support a broad claim construction which is otherwise foreclosed**."

*Columbia Univ. v. Symantec Corp.,* 811 F.3d 1359, 1363 (Fed. Cir. 2016)

Figure 14 Embodiment

FIG. **14** is a flowchart illustrating one method for determining whether an application of a mobile device is operable. In step **1402**, method **1400** downloads characteristics over Internet for one or more mobile devices to be emulated. In step **1404**, method **1400** tests the application for the mobile devices, via the Internet, using an emulator to determine if the application is operable on the mobile device.

192 Patent, 4:34-40

**30**. A method for determining whether an application for a mobile device having an application player is operable on the mobile device, comprising:

downloading, over the Internet, characteristics indicative of performance of the mobile device to be emulated; and

emulating, via a personal computer, the mobile device, based on the characteristics to determine if the application is operable by the application player on the mobile device;

wherein the step of emulating comprises playing the application in real time using the application player within the model.

910 Patent, claim 30

23

# Inventor Used Different Numerals For Different Embodiments

FIG. **5** shows one exemplary window **500** that includes display **300** of FIG. **3** and display **400** of FIG. **4** and an exemplary user interface. In particular, window **500** shows selection of a mobile device (i.e., NOKIA 3650 in this example) from a pull-down list **502** that results in display of characteristics **504** of the selected mobile device. Characteristics **504** may represent characteristics **115** of FIG. **1**A, for example. Window **500** facilitates interaction with model **102** through display **400** and monitoring of resource utilization of application **104** through window **300**. Further, pull-down list **502** allows easy selection of further mobile devices upon which application **104** is to be profiled.

192 Patent, 9:5-17

Window **1200** shows a pull-down list **1202** of network characteristics that may be simulated by simulator **810**. For example, simulator **810** may allow control of scripted events (e.g., cell tower identification, service message, bandwidth, etc.), consumer events (e.g., checking email, checking messages, browsing network, available minutes, selecting images, etc.) and incoming events (e.g., phone calls, WAP Messages, receiving MMS, receiving SMS, etc.). Based upon selection from list **1202**, a second list may be presented to allow further simulation requirements to be entered. In the example of window **1200**, consumer events entry of list **1202** was selected, resulting in display of pull-down list **1204** from which check messages was selected resulting in the display of pull-down list **1206**. In this example, the user may select 'send message' from list **1206** to evaluate the performance of application **104** while a message is received from the network.

192 Patent, 12:3-20

FIG. **9** shows one exemplary window **900** for selecting operator networks based upon geographic location. Window **900** shows a menu item **902** that, upon selection by the user, displays a world map **904** that allows the user to select a geographical region in which mobile device **114** is to operate.

192 Patent, 11:49-53

24

"Representations during prosecution cannot enlarge the content of the specification."

*Biogen, Inc. v. Berlex Labs, Inc.,* 318 F.3d 1132, 1140 (Fed. Cir. 2003)

"Where, as here, the written description clearly identifies what his invention is, **an expression by a patentee** during prosecution **that he intends his claims to cover more than what his specification discloses is entitled to little weight**."

*Honeywell Int'l, Inc. v. ITT Indus., Inc.,* 452 F.3d 1312, 1318-19 (Fed. Cir. 2006)

25

terminal **138**. In particular, frame based profile data **110** may be used to identify areas within application **104** where upon playing of application **104** within mobile device **114**, performance of mobile device **114** would be stressed. Thus, areas

192 Patent, 7:17-20

Flash applications are based upon a timeline of frames that may include graphical information and action scripts, FS Commands, network protocols, selected frame rate, etc. Flash Player **116** within mobile device **114** thus operates upon a time line of frames within application **104** to provide graphical displays (e.g., animations, rich media content) upon display **118**. Accordingly, profiled data **152** may also be based upon the timeline and frames of application **104** and displayed (e.g., frame based profile data **110**) as resource utilization related to one or more of: timeline, frames and processing performance of action scripts.

192 Patent, 7:60-8:3



192 Patent, Fig. 2 (partial)

26

| JPMC's Construction | Wapp's Construction |
|---------------------|---------------------|
| **Indefinite** | Plain meaning |

"…network characteristics indicative of performance of the mobile device…"

"…operator network characteristics, including at least bandwidth availability, indicative of performance of the mobile device…"

192 Patent, claim 1; 864 Patent, claim 1

678 Patent, claim 1

# Prior Constructions Do Not Support Definiteness

| Term or Phrase | Prior Construction | JPMC's Construction |
|---|---|---|
| Network characteristics | Plain and ordinary meaning | Plain and ordinary meaning |
| Indicative of | Plain and ordinary meaning | Plain and ordinary meaning |
| Network characteristics indicative of performance of the mobile device | Not construed | Indefinite |

44.    (Currently Amended)        A system for developing an application for a mobile device comprising:

a software authoring interface configured to simultaneously visually emulate, via one or more profile display windows, a plurality of ~~network hardware~~ **characteristics** indicative of performance of the mobile device when executing the application; wherein the software authoring interface is further configured to simulate a network connection state encountered by the mobile device.

Exhibit D at 8 of 13

As both parties have noted, the patent claims and specification generally use the term "emulate" to refer to a "mobile device" and the term "simulate" to refer to "network characteristics." ...

[1] Wapp agrees with Defendants that the use of "emulate" to refer to "network characteristics" in claim 1 of the '192 patent was an editing error during prosecution. (*See* Defendants' Defendants' Claim Construction Brief, at 17 n.10, and Defendants' Claim Construction Slides at 94-96.) That claim should recite the term "simulate" to refer to "network characteristics." Whether the Court corrects the relevant language or finds that claim invalid for lack of written description, as Defendants have raised, is an issue for later adjudication.

Exhibit A, page 3

# "Network Characteristics" Do Not Indicate Device Performance



profiled hardware characteristics

"network characteristics"

192 patent, Fig. 12

# "Network Characteristics" Do Not Indicate Device Performance



192 Patent, Fig. 2

utilized by application **104**. Profiled data **152** may be stored (as shown in dashed outline) within storage **134** and/or displayed as frame based profile data **110** on display **140** of terminal **138**. In particular, frame based profile data **110** may be used to identify areas within application **104** where upon playing of application **104** within mobile device **114**, performance of mobile device **114** would be stressed. Thus, areas

192 Patent, 7:14-20

31

# "Network Characteristics" Do Not Indicate Device Performance



External Events
(e.g.) "send message"

**12**. The system of claim **1**, wherein the software authoring interface is configured to allow a user to simulate an incoming sms message.

192 Patent, claim 12

32

# "Select One Or More Characteristics" Is Indefinite

| JPMC's Construction | Wapp's Construction |
|---|---|
| Indefinite | Plain and ordinary meaning |

**15**. A non-transitory, computer-readable medium comprising software instructions for developing an application to be run on a mobile device, wherein the software instructions, when executed, cause a computer to:

select one or more characteristics associated with a mobile device;

monitor utilization of one or more resources of the mobile device over time by an application running on a simulation of the mobile device;

display a representation of one or more of the monitored resource;

correspond the utilization of a specific displayed resource at a given time with one or more functions, or code, or both of the application responsible for that utilization;

initiate transmission of the application on a simulation of the mobile device, or to the physical mobile device, or both.

579 Patent, claim 15

33

**1**. A non-transitory, computer-readable medium comprising software instructions for developing an application to be run on a mobile device, wherein the software instructions, when executed, cause a computer to:

   display a list of one or more mobile device types from which a user can select;

   simulate one or more characteristics of a selected mobile device type;

   initiate loading of at least one of the selected characteristics from at least one of a remote server and a computer-readable media;

   monitor utilization of one or more resources of the selected mobile device type over time as an application is running;

   display a representation of one or more of the monitored resources.

579 Patent, claim 1

**15**. A non-transitory, computer-readable medium comprising software instructions for developing an application to be run on a mobile device, wherein the software instructions, when executed, cause a computer to:

   select one or more characteristics associated with a mobile device;

   monitor utilization of one or more resources of the mobile device over time by an application running on a simulation of the mobile device;

   display a representation of one or more of the monitored resource;

   correspond the utilization of a specific displayed resource at a given time with one or more functions, or code, or both of the application responsible for that utilization;

   initiate transmission of the application on a simulation of the mobile device, or to the physical mobile device, or both.

579 Patent, claim 15

34

Case 4:23-cv-01137-ALM    Document 73-1    Filed 11/08/24    Page 36 of 57 PageID #: 3273

It is readily apparent from the context of the claim itself that the phrase "the selected characteristics" finds its antecedent basis in the "one or more characteristics of a selected mobile device type." The claim lets a user *select* a mobile device type and the *selected* mobile device type has associated *characteristics*. Therefore, the characteristics of the selected mobile device type are the *selected characteristics*. This is how a POSITA would understand the term—there is no ambiguity. Ex. 7 at ¶84. The specification's description of Figure 6 is also consistent with this understanding. '579 Pat. at 9:20-22 ("a user of window 500 *selects a mobile device* using pull-down list 502 and emulator 101 *loads mobile device characteristics* 115 into memory 132.").

Wapp's Brief in Bank Cases, at 26

# The Court Rejected Wapp's Argument

F.3d at 1323. Also, Plaintiffs propose inferring that "the characteristics of the selected mobile device type are the selected characteristics" (Dkt. #73 at p 26), but this proposed inference lacks any persuasive support. Moreover, this suggested inference is unclear as to *which* characteristics are selected (or, if this inference is intended to refer to *all* characteristics, this inference is unclear as what "all" characteristics would mean in this context).

Bank Cases Order, at 41

36

**15**. A non-transitory, computer-readable medium comprising software instructions for developing an application to be run on a mobile device, wherein the software instructions, when executed, cause a computer to:

select one or more characteristics associated with a mobile device;

monitor utilization of one or more resources of the mobile device over time by an application running on a simulation of the mobile device;

display a representation of one or more of the monitored resource;

correspond the utilization of a specific displayed resource at a given time with one or more functions, or code, or both of the application responsible for that utilization;

initiate transmission of the application on a simulation of the mobile device, or to the physical mobile device, or both.

579 Patent, claim 15

In step **602**, method **600** loads characteristics defining hardware attributes and performance of the mobile device. In one example of step **602**, a user of window **500** selects a mobile device using pull-down list **502** and emulator **101** loads mobile device characteristics **115** into memory **132**.

In step **604**, method **600** emulates the mobile device using a model based upon the characteristics. In one example of step **604**, emulator **101** generates device model **102** based upon mobile device characteristics **115**.

In step **606**, method **600** loads the application into the model. In one example of step **606**, emulator **101** loads application **104** into device model **102**.

In step **608**, method **600** plays the application within the model. In one example of step **608**, emulator **101** plays application **104** within model **102**.

579 Patent, 9:18-32

In one embodiment, maps **904**, **908** and lists **1004**, **1104**, **1202**, **1204** and **1206** are based upon information received by operator interface **802** from one or more operator development servers **808**. Thus, functionality of model **102** and selectable simulations of simulator **810** may be easily updated by the operator as new mobile devices are created without requiring updates to software of emulator **101**.

Optionally, the user may select menu item **901**, FIG. **9**, to immediately locate, download and import modeling characteristics into emulator **101**. These characteristics may be stored within storage **134** of computer **130**, FIG. 1B.

579 Patent, 12:21-31



FIG. 9

579 Patent, Fig. 9

38

# Wapp's Embodiments Show Selecting A Mobile Device

tion **104**. Specifically, model algorithms **148** define operation of mobile device **114** based upon mobile device characteristics **115**.

192 Patent, 5:52-54

For example, characteristics **115** may be included for each mobile device type targeted by application **104**. A user of system **100** may then select one or more target mobile devices from a list based upon available characteristics **115**. As appre-

192 Patent, 6:39-44

| TABLE 1 | |
|---|---|
| Mobile Device Characteristics | |
| Parameter | Value |
| Name | NOKIA 3650 |
| Processor | ARM 4T |
| Processor Speed | 104 MHz |
| Storage Access Speed | 5.88 files/second |
| RAM Size | 256 MB |
| Storage Size | 512 MB |
| Display Width | 256 |
| Display Height | 394 |

192 Patent, 5:55-66

39

# "The Physical Mobile Device" Is Indefinite

| JPMC's Construction | Wapp's Construction |
|---|---|
| **Indefinite** | Plain meaning |

15. A non-transitory, computer-readable medium comprising software instructions for developing an application to be run on a mobile device, wherein the software instructions, when executed, cause a computer to:

select one or more characteristics associated with a mobile device;

monitor utilization of one or more resources of the mobile device over time by an application running on a simulation of the mobile device;

display a representation of one or more of the monitored resource;

correspond the utilization of a specific displayed resource at a given time with one or more functions, or code, or both of the application responsible for that utilization;

initiate transmission of the application on a simulation of the mobile device, or to the physical mobile device, or both.

579 Patent, claim 15

# No Certainty About Scope Of "The Physical Mobile Device"

**15.** A non-transitory, computer-readable medium comprising software instructions for developing an application to be run on a mobile device, wherein the software instructions, when executed, cause a computer to:

select one or more characteristics associated with a mobile device;

monitor utilization of one or more resources of the mobile device over time by an application running on a simulation of the mobile device;

display a representation of one or more of the monitored resource;

correspond the utilization of a specific displayed resource at a given time with one or more functions, or code, or both of the application responsible for that utilization;

initiate transmission of the application on a simulation of the mobile device, or to the physical mobile device, or both.

579 Patent, claim 15

**Does "the physical mobile device type" refer to**

– Any physical mobile device?

– A specific physical mobile device?

– Any physical mobile device type?

– A specific physical mobile device type?

41

"Had [the inventor] simply wanted to claim ['the mobile device instead of 'the physical mobile device'], it could have done so."

*Amgen Inc. v. Sandoz Inc.,* 923 F.3d 1023, 1031-32 (Fed. Cir. 2019)

# Inventor Deliberately Chose To Recite "The Physical Mobile Device"

Inventor knew how to claim "**the mobile device**" and
**<u>purposefully chose</u>** to claim "**the physical mobile device**"

initiate transmission of the application <u>on a simulation of the mobile device, or to</u> ~~that is being developed to one or more physical versions of~~ the physical mobile device<u>, or both</u>.

579 Patent Prosecution History, Ex. F at 13 of 16

# Improper To Rewrite Claims

"It is well settled that **no matter how great the temptations** of fairness or policy making, **courts do not redraft claims**."

*Quantum Corp. v. Rodime, PLC,* 65 F.3d 1577, 1584 (Fed. Cir. 1995)

"Adopting [patentee's] proposal would require rewriting the claims, but **it is not our function to rewrite claims to preserve their validity**."

*Synchronoss Techs., Inc. v. Dropbox, Inc.,* 987 F.3d 1358, 1367 (Fed. Cir. 2021)

44

# "On The Mobile Device" Is Indefinite

| JPMC's Construction | Wapp's Construction |
|---|---|
| **Indefinite** | Plain and ordinary meaning |

Claim never cites "**a mobile device**" or "**on a mobile device**"

60. A system comprising:
an application configured to enable a user to modify a photo on the mobile device, wherein the application is developed using a software authoring platform configured to simultaneously visually emulate, via one or more profile display windows, a plurality of hardware characteristics indicative of performance of the mobile device when executing the application.

192 Patent, claim 60

45

**60**. A system comprising:
an application configured to enable a user to modify a photo on the mobile device, wherein the application is developed using a software authoring platform configured to simultaneously visually emulate, via one or more profile display windows, a plurality of hardware characteristics indicative of performance of the mobile device when executing the application.

192 Patent, claim 60

- **Does "on the mobile device" refer to:**
  - A "system"?
  - An "application"?
  - A "user"?
  - Or "to modify a photo"?

- **Is it:**
  - Any mobile device?
  - Any mobile device type?
  - A selected mobile device type?
  - A physical device?
  - An emulated device?

# Wapp Cannot Rewrite The Claim

"This court, however, **repeatedly and consistently** has recognized that **courts may not redraft claims**, whether to make them operable or **to sustain their validity**."

*Chef Am., Inc. v. Lamb-Weston, Inc.,* 358 F.3d 1371, 1374 (Fed. Cir. 2004)

"Had the inventors intended this limitation ["on a mobile device"], **they could have drafted the claims to expressly include it**."

*i4i Ltd. P'ship v. Microsoft Corp.,* 598 F.3d 831, 843 (Fed. Cir. 2010)

# Wapp Cannot Identify Any Proper Antecedent Basis

> "Expert testimony may not be used to vary or contradict the claim language."
>
> *AFG Indus. v. Cardinal IG, Co.,* 239 F.3d 1239, 1249 (Fed. Cir. 2001)

"Patent draftsmanship **is an exacting art**."

*Zenon Env't, Inc. v. U.S. Filter Corp.,* 506 F.3d 1370, 1382 (Fed. Cir. 2007)

"A patent must be precise enough to **afford clear notice** of what is claimed."

*Nautilus, Inc. v. Biosig Instruments, Inc.,* 572 U.S. 898, 909 (2014)

"The Court can 'correct 'on **the** mobile device' to 'on **a** mobile device'…"

Wapp's Reply Brief, Dkt. 71 at 12

"Because the purported error is **more than a misspelling or a missing letter**, [plaintiff's] request to modify the plain language is inappropriate."

*Smartflash LLC v. Apple Inc.,* 77 F. Supp. 3d 535, 561 (E.D. Tex. 2014)

"**Nearly impossible standard** for judicial correction of a patent."

*LG Elecs., Inc. v. Quanta Comp. Inc.,* 566 F. Supp. 2d 910, 13 (W.D. Wis. 2008)

# "The Connection Simulation" Is Indefinite

| JPMC's Construction | Wapp's Construction |
| --- | --- |
| **Indefinite** | Plain meaning |

**2.** The system of claim **1**, wherein the software authoring interface is configured to enable a user to select from one or more connection simulations for testing how well mobile content performs on the mobile device.

192 Patent, claim 2

**4.** The system of claim **2**, wherein the connection simulation includes one or more profiles.

192 Patent, claim 4

51

**2.** The system of claim **1**, wherein the software authoring interface is configured to enable a user to select from one or more connection simulations ....

**3**. The system of claim **2**, wherein the one or more connection simulations ...

**4**. The system of claim **2**, wherein the connection simulation includes one or more profiles.

**8**. The system of claim **2**, wherein the one or more connection simulations ...

**9**. The system of claim **2**, wherein the one or more connection simulations ...

**The inventor knew how to refer back to "one or more connection simulations" when so desired.**

"Plainly, then, had the inventors desired ["the connection simulation"] to include ["one or more" simulations], they could easily have included [those words] in the claim language.  **In the absence of their decision to do so, however, we will not take it upon ourselves to rewrite the claim in that way."**

*Takeda Pharm. Co. Ltd. v. Zydus Pharms.,* 743 F.3d 1359, 1364 (Fed. Cir. 2014)

**2**. The system of claim **1**, wherein the software authoring interface is configured to enable a user to select from one or more connection simulations for testing how well mobile content performs on the mobile device.

192 Patent, claim 2

**4**. The system of claim **2**, wherein the connection simulation includes one or more profiles.

**5**. The system of claim **4**, wherein the profiles include preset profiles.

192 Patent, claims 4 & 5

**4**. The system of claim **2**, wherein the connection simulation includes one or more profiles.

192 Patent, claim 4

54

# *Baldwin* Is Inapplicable

| *Baldwin* | 192 Patent |
|---|---|
| a pre-soaked fabric roll | one or more connection simulations |
| said fabric roll | the connection simulation |

"… the limitations in claim 32 all **relate to proper antecedent basis**.  Thus, the confusion or indefiniteness problem addressed by § 2173.05(e) does not arise in this claim."

*Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1343 (Fed. Cir. 2008)

"Similarly, if two different levers are recited earlier in the claim, the recitation of 'said lever' in the same or subsequent claim would be unclear where it is uncertain which of the two levers was intended."

*Baldwin*, 512 F.3d at 1343 (quoting MPEP § 2173.05(e))