# Exhibit A

*WAPP TECH LTD. PARTNERSHIP, ET AL. V. JPMORGAN CHASE BANK*

No. 4:23-cv-01137-ALM

# Claim Construction Hearing

November 8, 2024

# Court's Previous Constructions

**"[P]revious claim constructions in cases involving the same patent are entitled to substantial weight."**
*TQP Development, LLC v. Intuit Inc.*, No. 2:12-cv-180-WCB, 2014 U.S. Dist. LEXIS 84057 at *22 (E.D. Tex. June 20, 2014).

| Claim Term | Court's Prior Construction (Wapp Agrees) | JPMC's Proposed Construction |
|---|---|---|
| **"emulate" / "simulate"** | Same meaning. Plain meaning. (*Micro Focus* Order at 25) | Different meanings: "model the hardware [of]" / "represent features of" |
| **"application"** | Plain meaning. (*Micro Focus* Order at 16) | "frame based application" |
| **"system for [testing/developing] an application for a mobile device"** | The preamble is limiting. Plain meaning. (*Micro Focus* Order at 13) | Not limiting. |

The parties in the Bank Cases agreed to the above constructions. Bank Case Order at 8.

# "simulate" / "emulate"

| Claim Term | Wapp's Proposed Construction | JPMC's Proposed Construction |
|---|---|---|
| **"simulate"** ('192 Patent, Claims 1, 12-13; '864 Patent, Claim 1; '678 Patent, Claims 1, 3; '811 Patent, Claims 1, 8, 22, 24; '579 Patent, Claims 19-20, 33) | "emulate" | "represent features of"; Different than emulate. |
| **"emulate"** ('192 Patent, Claim 1, 60; '11 Patent, Claim 26) | Plain meaning. | "model the hardware [of]" |

# This Court's Prior Ruling in *MicroFocus*



The Court therefore hereby expressly rejects Defendants' proposed constructions. No further construction is necessary except to clarify that the patentee used the terms "simulate" and "emulate" interchangeably. *See O2 Micro*, 521 F.3d at 1362; *see also Finjan*, 626 F.3d at 1207; *Summit 6*, 802 F.3d at 1291.

The Court accordingly hereby construes the disputed terms as set forth in the following chart:

| Term | Construction |
| --- | --- |
| "simulate" | "emulate" |
| "emulate" | Plain meaning |

*Micro Focus* Order at 25

4

# The Claims Use "Simulate" and "Emulate" Interchangeably





**1.** A system for developing an application for a mobile device comprising:

a software authoring interface configured to simultaneously visually emulate, via one or more profile display windows, a plurality of network characteristics indicative of performance of the mobile device when executing the application; wherein the software authoring interface is further configured to simulate a network connection state encountered by the mobile device.

Pat. No. 8,924,192

5

# The Claims Use "Simulate" and "Emulate" Interchangeably



**1.** A system for testing an application for a mobile device comprising:

software configured to simulate, via one or more profile display windows, a plurality of network characteristics indicative of performance of the mobile device when executing the application; wherein the network characteristics are based on data of interaction with networks in non-simulated environments.

**9.** The system of claim **8**, wherein the one or more scenarios define one or more events that occur during the test which includes defining one or more virtual users to simulate real users.

**10.** The system of claim **9**, wherein the one or more virtual users emulate actions of real user behavior.

**11.** The system of claim **10**, wherein the actions that are performed by one or more virtual users are recorded to generate a script which can be modified to emulate real user behavior.

Pat. No. 9,298,864

6

# The Claims Use "Simulate" and "Emulate" Interchangeably

**16**. The system of claim **1**, wherein the software authoring interface has access to real-time interaction with network operators to measure and emulate network characteristics.

'192 Claim 16

**16**. The system of claim **1**, wherein the software has access to real-time interaction with network operators to measure and simulate network characteristics.

'678 Claim 16

**60**. A system comprising:
an application configured to enable a user to modify a photo on the mobile device, wherein the application is developed using a software authoring platform configured to simultaneously visually emulate, via one or more profile display windows, a plurality of hardware characteristics indicative of performance of the mobile device when executing the application.

'192 Claim 60

**15**. A non-transitory, computer-readable medium comprising software instructions for developing an application to be run on a mobile device, wherein the software instructions, when executed, cause a computer to:
select one or more characteristics associated with a mobile device;
monitor utilization of one or more resources of the mobile device over time by an application running on a simulation of the mobile device;

'579 Claim 15

7

# The Specification Uses "Simulate" and "Emulate" Interchangeably



devices in targeted geographical markets worldwide as well as real-time interaction with network Operators to measure and emulate network characteristics within each market is

In step **1316**, method **1300** selects network characteristics to simulate. In one example of step **1316**, the user utilizes lists **1202**, **1204** and **1206** of window **1200** to specify network characteristics for simulation by simulator **810**.

FIG. **8** is a block diagram illustrating interaction of emulator **101** with an operator development server **808** via Internet **822** for simulating playing of application **104** within a mobile device connected to a wireless network (e.g., a mobile phone wireless network). FIGS. **9**, **10**, **11** and **12** show exem-

Pat. No. 8,924,192 at 2:6-8; 13:9-10; 10:30-34.

8

# The Specification Uses "Simulate" and "Emulate" Interchangeably

part of emulator **101** into memory **132** for execution. Emulator **101** then generates mobile device model **102**, based upon characteristics **115**, within memory **132**. Emulator **101** then loads and plays application **104** within model **102**. Emulator

'192 at 7:5-8

FIG. **1**. Further, emulator **101** may download additional model data **820** for use within device model **102** for increasing simulated functionality of model **102** (e.g., simulating additional handset functionality and/or network functionality). The user of emulator **101** may, for example, purchase

910 at 10:58-62

utilizing Internet **822**). In this embodiment, simulator **810** may operate within emulator **101**, within authoring environment **122** or within computer **130** to provide interaction with model **102**.

'192 at 13:20-24



'192 at Fig. 8

9

# Chase Admits "Simulate" and "Emulate" Include Each Other

'192 patent, 12:3-13.  The specification also describes "simulating" the application, which means playing the application on an emulated device model in a simulated network environment.  *Id.*,

Chase's Response Brief at 8.

122.    As I described above, with respect to the term "emulate," at most, the emulator can simulate (*i.e.*, represent features of the mobile device via emulation), but the simulator is never described to model hardware of any kind.  In other words, the emulator can emulate and simulate, but the simulator can *only* simulate and cannot "emulate."  The terms are not

Chase Expert Dec. (Ex. 9) at ¶122

10

# The Claim Language is Not a Mistake

a software authoring interface configured to simultaneously visually <mark>emulate</mark>, via one or more profile display windows, a plurality of <mark>network hardware characteristics</mark> indicative of performance of the mobile device when executing the application; wherein the software authoring interface is further configured to simulate a network connection state encountered by the mobile device.

'192 File History – Claim Amendment Dated **Oct. 17, 2014** (this claim issued as '192 cl. 1)

59.    (New)   The system of claim 44, wherein the software authoring interface has access to real-time interaction with network operators to measure and <mark>emulate network characteristics</mark>.

'192 File History – Claim Amendment Dated **April 7, 2014** (this claim issued as '192 cl. 16)

# Extrinsic Confirmation

**simulate** —1. To use the behavior of another system to represent certain behavioral features of a physical or abstract system. 2. To represent the functioning of a device, system, or computer program by another; e.g., to represent one computer by another, to represent the behavior of a physical system by the execution of a computer program, or to represent a biological system by a mathematical model. To represent, by imitation, the functions of one system or process by means of another. *See* emulate.

Dictionary of Modern Electronics (Ex. 11) at 697

**emulate** —1. To imitate one system with another, such that the imitating system accepts the same data, executes the same programs, and achieves the same results as the imitated system. 2. To imitate a computer system by a combination of hardware and software that allows programs written for one computer to be run on another. *See* simulate.

Dictionary of Modern Electronics (Ex. 11) at 257

# "application"

| Claim Term | Wapp's Proposed Construction | JPMC's Proposed Construction |
|---|---|---|
| **"application"**<br><br>('192 Patent, Claims 1, 60, 65; '864 Patent, Claims 1, 8; '678 Patent Claim, 1; '811 Patent, Claims 1-2, 9, 22, 26; '579 Patent, Claims 15-16, 20) | Plain meaning. | "frame based application" |

# Chase Admits the Ordinary Meaning is Not Limited to Frame-Based

objects that interact with one another. As of the asserted priority date of the Asserted Patents, a POSA would have known that programmers commonly relied on object-oriented languages to develop more advanced applications for the Internet age and for mobile devices. For example, '192 patent refers to "Java, .NET and BREW" as examples of early frontrunners for development with mobile device targets. ('192 patent, 3:40-41). Programs for each of these platforms could be written with an associated object oriented language: Java language to develop for the Java

Chase Dec. (Ex. 9) ¶66

69.    Applications for the Flash Player, or any of the platforms described above, could be written using different tools. By the time of the Asserted Patents a class of software known as integrated development environments, or IDEs, was commonly used. A POSA would have been aware of such IDEs and their use for application development. IDEs are generally an integrated

Chase Dec. (Ex. 9) ¶69

# Chase Must Prove Disavowal or Express Definition



"The words of a claim are generally given their ordinary and customary meaning … There are only two exceptions to this general rule:
1) when a patentee sets out a definition and acts as his own lexicographer, or
2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution."

*Thorner v. Sony Comput. Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012)

"[T]he standard for disavowal is **exacting**, requiring **clear and unequivocal evidence** that the claimed invention includes or does not include a particular feature. Ambiguous language cannot support disavowal." *Poly-Am., L.P. v. API Indus., Inc.*, 839 F.3d 1131, 1137 (Fed. Cir. 2016) .

"[T]o act as its own lexicographer, a patentee must '**clearly set forth a definition** … the patentee must '**clearly express an intent' to redefine the term**." *Thorner* at 1365.

15

# Chase Does Not Cite Any Disavowal or Definition

- Chase does not try to argue disavowal or definition.

- Chase cites primarily to the Figure 1 embodiment.

FIG. **1A** shows one exemplary embodiment of a system **100** for emulating and profiling a frame based application **104** playing on a mobile device **114** that includes a Flash Player **116**. System **100** is shown with an emulator **101**, a profiler **106** and a display **110**. Emulator **101** generates a mobile device model **102**, based upon mobile device characteristics **115** of mobile device **114**. Model **102** emulates mobile device **114** to play frame based application **104** and may, for example, generate an emulated mobile device display **111** that represents mobile device **114**. Emulated mobile device display **111** may be interactive to allow a user to interact (in a manner similar to interacting with device **114**) with application **104** while playing within model **102**.

'192 Patent 4:53-65

16

# The Federal Circuit Warns Against Confining Claims to Embodiments



"[A]lthough the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments. … [W]e have expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment."

*Phillips v. AWH Corp.,* 415 F.3d 1303, 1323 (Fed. Cir. 2005) (en banc).

# The Claims Show "Application" is Not Limited to "Frame Based"





**20**. A method for emulating <mark>an application</mark> playing on an <mark>application player</mark> in each of a plurality of mobile devices, the method comprising:

retrieving characteristics, indicative of performance, for each of the mobile devices; emulating each of the mobile devices in real time using respective models running on a processor extrinsic to the mobile devices, wherein each of the models is based on the retrieved characteristics; playing <mark>the application</mark> in real time using <mark>the application</mark> player within each of the models; monitoring the application playing in each of the models to determine resource utilization information by <mark>the application</mark> for each of the mobile devices; and displaying the resource utilization information for at least one of the mobile devices.

**25**. The method of claim **20**, further comprising identifying one or more frames of <mark>a frame-based application</mark> where resource utilization of the application exceeds a maximum resource availability threshold of any one of the mobile devices.

Pat. No. 9,298,864

18

# The Claims Show "Application" is Not Limited to "Frame Based"

**29**. A method for emulating an ==application== playing on at least one mobile device comprising:

receiving instructions to select each said mobile device from a list including characteristics indicative of performance of each said mobile device; emulating each said mobile device using a respective model, wherein each said model is based upon the characteristics of a respective said mobile device; playing the application in real time within each said model; monitoring each said model to determine resource utilization of the application for each said mobile device; and displaying the resource utilization information.

**31**. A method for emulating a ==frame-based application== playing on a mobile device that includes an application player, the method comprising:

retrieving characteristics indicative of performance of the mobile device; emulating, on a processor extrinsic to the mobile device, the mobile device as a model based upon the retrieved characteristics; playing the application in real time within the model; monitoring the application playing in the model to determine utilization of the mobile device's resources by the application; identifying a frame of the application where resource utilization by the application exceeds a maximum resource availability threshold of the mobile device; and displaying the identified frame to indicate a crash of the application on the emulated mobile device.

Pat. No. 9,298,864

19

# The Specification Shows "Application" is Not Limited to "Frame Based"

(57)        **ABSTRACT**

A system and methods emulate an application executing in real time in a mobile device. The mobile device is emulated in real time using a model running on a processor extrinsic to the mobile device. The model is based on characteristics indicative of performance of the mobile device. The application is executed in real time within the model and the application executing in the model is monitored to determine resource utilization information by the application for the mobile device. The resource utilization information for the mobile device is displayed.

'192 Patent at Abstract

FIG. **14** is a flowchart illustrating one method for determining whether an application of a mobile device is operable.

'192 Patent at 3:24-25

START

| DOWNLOAD CHARACTERISTICS OVER INTERNET FOR ONE OR MORE MOBILE DEVICES TO BE EMULATED | 1402 |

| TEST, VIA THE INTERNET, THE APPLICATION FOR THE MOBILE DEVICES USING AN EMULATOR TO DETERMINE IF THE APPLICATION IS OPERABLE ON THE MOBILE DEVICE | 1404 |

END

'192 Patent Fig. 14

In step **702**, method **700** authors an application for a mobile device. In one example of step **702**, a user interacts with frame based application development tool **112** to author application **104**.

'192 Patent at 9:50-54

20

# Provisional Discusses Non-Frame-Based Application Development Tools

Early frontrunners like Java, .NET and BREW have taken great strides in the early/formative years, the likes of SurfKitchen, Action Engine, MFORMA and others taking SMS, MMS and mobile gaming to exciting consumer levels. However, with a market primarily based on the Java and J2ME platform, mobile content and entertainment revenues achieved less than 3% of the total mobile service revenue and less than 19% of non-voice revenue.[2]

Is this a failure? Based on current market projections and a weighted ARPU, total consumer spending on mobile content will only achieve approximately 72Bn by 2008. With the inherent runtime limitations of these current languages, consumer uptake of mobile content will reach approximately 1/7 or 14% of the total projected levels by 2008.[3] Therefore, either Java and the early frontrunners will substantially evolve to become a more consumer-adapted platform to meet an unprecedented market need, or a new platform will emerge to drive mobile commerce to projected levels.

This year marks the 10-year anniversary of the Java platform. It was on May 22nd, 1995 that Sun Microsystems first unveiled its Java technology to the world. In the past year, Java was one of the largest funded technology platforms in one of the largest emerging venture markets, mobile commerce.[8] And yet, in the past 4 months NOKIA and Samsung, two of the top three handsets makers, have now signed strategic licensing agreements with Macromedia to ship the Flash Lite platform on their handsets.[9] This in addition to significant licensing agreements with NTT DoCoMo and KDDI in Japan and Bellwave in Korea. Why a potential paradigm shift in mobile platforms?[10] Past precedent can perhaps point to the answer.

Provisional (Ex. 12) at 10, 12

21

# No Prior Party has Ever Tried to Limit "Application" to "Frame Based"



- Neither Micro Focus, Wells Fargo, nor Bank of America believed "application" was limited to "frame based application."

- During prosecution, Wapp never raised any "frame based" distinction over the prior art.

| Claim Term | Wapp's Proposed Construction | JPMC's Proposed Construction |
|---|---|---|
| **"network characteristics indicative of performance of the mobile device when executing the application"**<br><br>('192 Patent, Claim 1; '864 Patent, Claim 1) | Plain meaning. | Indefinite. |
| **"operator network characteristics including at least bandwidth availability indicative of performance of the mobile device when executing the application"**<br><br>('678 Patent Claim, 1) | Plain meaning. | Indefinite. |

23

# The Court has Construed "Network Characteristics" and "Indicative of"



The Court accordingly hereby construes **"network characteristics"** to have its **plain meaning**.

The Court therefore hereby construes **"indicative of"** to have its **plain meaning**.

Bank Case Order at 28, 37

Chase does not challenge these constructions or argue that these terms are indefinite.

24

# The Claims Include an Example of "Network Characteristics"





**1.** A system for testing an application for a mobile device comprising:

a software testing interface configured to simultaneously visually simulate, via one or more profile display windows, a plurality of operator network characteristics including at least bandwidth availability indicative of performance of the mobile device when executing the application; wherein the bandwidth availability is based at least in part on bandwidth data predetermined from interactions between one or more mobile devices and at least one operator network.

Pat. No. 9,971,678

25

# The Specification Includes Many Examples of "Network Characteristics"

Window **1200** shows a pull-down list **1202** of network characteristics that may be simulated by simulator **810**. For example, simulator **810** may allow control of scripted events (e.g., cell tower identification, service message, bandwidth, etc.), consumer events (e.g., checking email, checking messages, browsing network, available minutes, selecting images, etc.) and incoming events (e.g., phone calls, WAP Messages, receiving MMS, receiving SMS, etc.). Based upon selection from list **1202**, a second list may be presented to allow further simulation requirements to be entered. In the example of window **1200**, consumer events entry of list **1202** was selected, resulting in display of pull-down list **1204** from which check messages was selected resulting in the display of pull-down list **1206**. In this example, the user may select 'send message' from list **1206** to evaluate the performance of application **104** while a message is received from the network.

'192 Patent at 12:3-20

26

# "select one or more characteristics associated with a mobile device"

| Claim Term | Wapp's Proposed Construction | JPMC's Proposed Construction |
|---|---|---|
| **"select one or more characteristics associated with a mobile device"** ('579 Patent, Claim 15) | Plain meaning. | Indefinite. |

# The Specification Includes Many Examples of "Mobile Device Characteristics"

| TABLE 1 | |
|---|---|
| **Mobile Device Characteristics** | |
| Parameter | Value |
| Name | NOKIA 3650 |
| Processor | ARM 4T |
| Processor Speed | 104 MHz |
| Storage Access Speed | 5.88 files/second |
| RAM Size | 256 MB |
| Storage Size | 512 MB |
| Display Width | 256 |
| Display Height | 394 |
| Pixel Depth | 24 |
| Processor Availability | 60% |
| RAM Availability | 60% |
| Storage Availability | 40% |

'192 Patent at 5:55-6:10

28

# The Specification Includes Examples of Selecting Characteristics

FIG. **5** shows one exemplary window **500** that includes display **300** of FIG. **3** and display **400** of FIG. **4** and an exemplary user interface. In particular, window **500** shows selection of a mobile device (i.e., NOKIA 3650 in this example) from a pull-down list **502** that results in display of characteristics **504 of the selected mobile device**. Characteristics **504** may represent characteristics **115** of FIG. **1A**, for example. Window **500** facilitates interaction with model **102** through display **400** and monitoring of resource utilization of application **104** through window **300**. Further, pull-down list **502** allows easy selection of further mobile devices upon which application **104** is to be profiled.

'192 Patent at 5:55-6:10

Optionally, the user may select menu item **901**, FIG. **9**, to immediately locate, download and import modeling characteristics into emulator **101**. These characteristics may be stored within storage **134** of computer **130**, FIG. **1B**.

'192 Patent at 12:28-31

29

# The Court Contrasted Claim 1 (Indefinite) with Claim 15 (Definite)



> language and should therefore be rejected. (*Id.* at pp. 29–30). Further, Defendants argue that the lack of antecedent basis is underscored by Claim 15 of the '579 Patent, which *does* recite an operation of "select[ing] one or more characteristics associated with a mobile device." (*Id.* at

Bank Case Order at 38

- The Court found claim 1 indefinite for lack of antecedent basis.

- Claim 15 has explicit antecedent basis; Chase does not disagree.

30

# "the physical mobile device"

| Claim Term | Wapp's Proposed Construction | JPMC's Proposed Construction |
|---|---|---|
| **"the physical mobile device"**<br>('579 Patent, Claims 15-16) | Plain meaning. | Indefinite. |

# The Claim Provides Explicit Antecedent Basis



United States Patent
Poulin

(10) Patent No.: US 10,691,579 B2
(45) Date of Patent: Jun. 23, 2020

**15**. A non-transitory, computer-readable medium comprising software instructions for developing an application to be run on a mobile device, wherein the software instructions, when executed, cause a computer to:

select one or more characteristics associated with a mobile device;

monitor utilization of one or more resources of the mobile device over time by an application running on a simulation of the mobile device;

display a representation of one or more of the monitored resource;

correspond the utilization of a specific displayed resource at a given time with one or more functions, or code, or both of the application responsible for that utilization;

initiate transmission of the application on a simulation of the mobile device, or to the physical mobile device, or both.

Pat. No. 10,691,579

# The Specification Describes Physical and Non-Physical Mobile Devices

times the speed of the eCommerce market. It is estimated that nearly 700 million new mobile devices will be shipped in 2005, with a new handset model being launched every other day. This rapid mobile device development requires that applications designed to run on these mobile devices also sustain rapid development. Development systems targeted at

'192 Patent at 1:58-60

106 and a display 110. Emulator 101 generates a mobile device model 102, based upon mobile device characteristics 115 of mobile device 114. Model 102 emulates mobile device 114 to play frame based application 104 and may, for example, generate an emulated mobile device display 111 that represents mobile device 114. Emulated mobile device

'192 Patent at 4:58-62

the targeted mobile device based upon resource usage. Currently, the only way to determine if an application plays on a particular mobile device is to transfer the application to the device and play it. During development of an application for

'192 Patent at 1:58-60

In step 704, method 700 plays the application within an emulation of the mobile device. In one example of step 704, emulator 101 generates model 102 based upon characteristics 115 of mobile device 114 and then loads and plays application 104 within model 102.

'192 Patent at 9:54-58

33

# "on the mobile device"

| Claim Term | Wapp's Proposed Construction | JPMC's Proposed Construction |
|---|---|---|
| **"on the mobile device"**<br>('192 Patent, Claim 60) | Plain meaning. | Indefinite. |

# "On the Mobile Device" is Not Indefinite





60. A system comprising:
an application configured to enable a user to modify a photo on ==the mobile device==, wherein the application is developed using a software authoring platform configured to simultaneously visually emulate, via one or more profile display windows, a plurality of hardware characteristics indicative of performance of ==the mobile device== when executing the application.

Pat. No. 8,924,192

*Lite-Netics v. Nu Tsai Capital,* 2024 U.S. Dist. LEXIS 162303, at *96 (D. Neb. Sep. 10, 2024)



- The term "the wire clamp" appeared for the first time in dependent claim 5 with no prior antecedent basis.

- Court: "The context provided by the specification makes plain what 'the wire clamp' is, despite the absence of that claim term from independent claim 1 from which claim 5 depends, such that the scope of the claim is reasonably ascertainable by a person of ordinary skill in the art." *Id.* at *100

- "[T]he Court finds that the claim term does not require 'judicial correction' because it means 'a wire clamp included in the base that holds the electrical wires in contact with the conductor.'" *Id.* at *100-101.

# Dr. Malek Agrees this Term is Clear



**Dr. Sam Malek**

Wapp's Expert

"It is apparent from the context of the claim that both instances of "the mobile device" refer to the same thing, *i.e.*, ***the first instance of 'the mobile device' provides antecedent basis for the second instance***. This is the only reasonable way to interpret the claim, and this is how a POSITA would interpret it."

Malek Dec. (Ex. 8) at ¶¶ 133-34.

Dr. Malek provides multiple examples where the "specification repeatedly discloses the concept of developing an application for a mobile device."

Malek Dec. (Ex. 8) at ¶¶ 136-141.

# Example Specification Teachings



In one embodiment, a method emulates and profiles an application to play on a ==mobile device== that includes a Flash Player. Characteristics defining performance of the ==mobile device== are loaded. The ==mobile device== is emulated using a model based upon the characteristics. The application is played and monitored within the model to determine resource utilization of the application for the ==mobile device==.

FIG. **1**A shows one exemplary embodiment of a system for emulating, authoring and visually profiling an application playing on a ==mobile device== that includes a Flash Player.

"Mobile device" appears 180 times in the '192 Patent and appears in every asserted claim.

Pat. No. 8,924,192 at Fig. 1A; 2:3-19; 2:61-63

38

# Example Specification Teachings

graphical images for display **111**. Where each frame of frames **223** includes multiple graphic elements and/or action scripts that involve ==image manipulation== (e.g., retrieving data from non-volatile storage, Avatar manipulations, animations, etc.), each frame may require differing resources in order to display correctly. For example, where a frame includes Avatar (e.g., an animated character) manipulation, a certain amount of processor resource is required, whereas a frame that is based upon movie file **224** may simply require data transfer time. If ==mobile device== **114** has insufficient processor resources (e.g., because the animation is too complex for the targeted mobile device), application **104** may crash (i.e., cease to function correctly). Thus, it is important to determine the 'stress' applied by application **104** to resources of ==mobile device== **114**.

Pat. No. 8,924,192 at 8:9-23.

39

# Alternatively, the Court can Correct "the" to "a"



"A district court may correct 'obvious minor typographical and clerical errors in patents.' … Correction is appropriate 'only if
(1) the correction is not subject to reasonable debate based on consideration of the claim language and the specification and
(2) the prosecution history does not suggest a different interpretation of the claims.'"

*Pavo Sols. LLC v. Kingston Tech. Co.*, 35 F.4th 1367, 1373 (Fed. Cir. 2022).

40

# "the connection simulation"

| Claim Term | Wapp's Proposed Construction | JPMC's Proposed Construction |
|---|---|---|
| **"the connection simulation"** <br> ('192 Patent, Claim 4) | Plain meaning. | Indefinite. |

# "The Connection Simulation" has Explicit Antecedent Basis



**2.** The system of claim **1**, wherein the software authoring interface is configured to enable a user to select from ==one or more connection simulations== for testing how well mobile content performs on the mobile device.

**4.** The system of claim **2**, wherein ==the connection simulation== includes one or more profiles.

Pat. No. 8,924,192

42

# *Baldwin* is Controlling Law



That 'a' or 'an' can mean 'one or more' is best described as a rule, rather than merely as a presumption or even a convention. … The **subsequent use of definite articles 'the'** or 'said' in a claim to refer back to the same claim term does not change the general plural rule, but **simply reinvokes that non-singular meaning**. … Because the initial indefinite article ('a') carries either a singular or plural meaning, any later reference to that same claim element merely reflects the same potential plurality."

*Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1342 (Fed. Cir. 2008).

- "the connection simulations" refers to the claimed "one or more connection simulations."

43

# "system for [testing/developing] an application for a mobile device"

| Claim Term | Wapp's Proposed Construction | JPMC's Proposed Construction |
|---|---|---|
| **"system for [testing/developing] an application for a mobile device"**<br><br>('192 Patent, Claim 1; '864 Patent, Claim 1; '678 Patent, Claim 1) | The preamble is limiting; Plain meaning. | Not limiting. |

# The Preambles Limit and Provide Antecedent Basis



1. A system for testing an **application** for a **mobile device** comprising:

software configured to simulate, via one or more profile display windows, a plurality of network characteristics indicative of performance of the **mobile device** when executing the **application**; wherein the network characteristics are based on data of interaction with networks in non-simulated environments.

Pat. No. 9,298,864

45

# "the monitored resource"

| Claim Term | Wapp's Proposed Construction | JPMC's Proposed Construction |
| --- | --- | --- |
| **"the monitored resource"**<br><br>('579 Patent, Claims 15, 27) | Plain meaning. | Indefinite. |

# '579 Claim 15



## (12) United States Patent
Poulin

(10) Patent No.: US 10,691,579 B2
(45) Date of Patent: Jun. 23, 2020

(54) SYSTEMS INCLUDING DEVICE AND NETWORK SIMULATION FOR MOBILE APPLICATION DEVELOPMENT

(71) Applicant: Wapp Tech Corp., Red Deer (CA)

(72) Inventor: Donavan P. Poulin, Kelowna (CA)

(73) Assignee: WAPP TECH CORP., Alberta (CA)

(*) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: 15/083,186

(22) Filed: Mar. 28, 2016

(65) Prior Publication Data
US 2016/0314060 A1    Oct. 27, 2016

Related U.S. Application Data

(60) Division of application No. 14/084,321, filed on Nov. 19, 2013, now Pat. No. 9,298,864, which is a division of application No. 12/705,913, filed on Feb. 15, 2010, now Pat. No. 8,589,140, which is a continuation-in-part of application No. 11/449,958, filed on Jun. 9, 2006, now Pat. No. 7,813,910.

(60) Provisional application No. 61/152,934, filed on Feb. 16, 2009, provisional application No. 60/689,101, filed on Jun. 10, 2005.

(51) Int. Cl.
G06F 9/455    (2018.01)
G06F 11/36    (2006.01)
G06F 8/72    (2018.01)
G06F 11/34    (2006.01)
G06F 30/33    (2020.01)
G06F 8/30    (2018.01)

(52) U.S. Cl.
CPC ........ G06F 11/3664 (2013.01); G06F 8/30 (2013.01); G06F 8/71 (2013.01); G06F 11/3457 (2013.01); G06F 11/3668 (2013.01); G06F 30/33 (2020.01); G06F 9/455 (2013.01); G06F 2201/86 (2013.01)

(58) Field of Classification Search
USPC ............. 703/2, 13, 22, 24, 27; 709/246
See application file for complete search history.

(56) References Cited

U.S. PATENT DOCUMENTS

5,892,704 A    4/1999    Slegers
5,937,421 A    8/1999    Petrov et al.
6,380,384 B1    5/2002    Hampshire et al.
(Continued)

FOREIGN PATENT DOCUMENTS

GB    2398456    8/2004
GB    2398457    8/2004
(Continued)

OTHER PUBLICATIONS

"A Sample MIDP Application", http://dsc.sun.com/mobility/midp/chapters/J2mewhit/chap04.pdf, Developing MI DP Applications, Chapter 4, Mar. 2002.
(Continued)

Primary Examiner — Thai Q Phan
(74) Attorney, Agent, or Firm — Sheridan Ross P.C.

(57)    ABSTRACT

A system, method and software product emulate and profile an application playing on a mobile device. The mobile device is emulated using a model based upon characteristics related to performance of the mobile device. The application is played and monitored within the model to determine resource utilization of the application for the mobile device.

34 Claims, 23 Drawing Sheets



**15.** A non-transitory, computer-readable medium comprising software instructions for developing an application to be run on a mobile device, wherein the software instructions, when executed, cause a computer to:

select one or more characteristics associated with a mobile device;

==monitor utilization of one or more resources== of the mobile device over time by an application running on a simulation of the mobile device;

display a representation of one or more of ==the monitored resource;==

# *Baldwin* is Controlling Law



"The ***subsequent use of definite articles 'the'*** or 'said' in a claim to refer back to the same claim term does not change the general plural rule, but ***simply reinvokes that non-singular meaning***."

*Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1342 (Fed. Cir. 2008).

- "the monitored resource" refers to the claimed "one or more resources" that are being monitored.